ORD. PET.

Case 18.

December 24.

## Lynn *vs.* Burgoyne.

### ERROR TO BRACKEN CIRCUIT.

Judge CRENSHAW delivered the opinion of the court.

1. A policy of insurance issued by a clerk of the company purporting on its face that "it shall not be valid until countersigned by John Burgoyne, agent at Cincinnati," and which was never so signed, is not a valid and binding policy.

2. Where a trust and confidence of a high character is given to an agent, he cannot transfer such authority, without express power to do so.

3. A note executed for insurance upon a void policy of insurance cannot be enforced.

Case stated.

This is an action of debt brought by Burgoyne to recover from Lynn the amount of a note, executed by him to the plaintiff for the sum of $420. Lynn relied for his defense, that there was no consideration for the note.

The plaintiff, Burgoyne, was the agent of the Columbus Insurance Company, Ohio, and resided at Cincinnati; and the note was executed to Burgoyne in consideration that he, as the agent of the company, would issue to the defendant a policy of insurance

to the amount of $6,000, upon the steamboat John Drennon, for one year.

An instrument, signed by the president of the company, purporting to be a policy of insurance, was issued and delivered to the defendant by G. W. Williams, the book-keeper of the company at Cincinnati. This instrument, upon its face, declares that it "shall not be valid, until countersigned by John Burgoyne, agent at Cincinnati." It never was countersigned by Burgoyne. But, some time after said instrument had been delivered to the defendant, two indorsements were made upon its back—one extending further privileges to the defendant, and the other transferring the instrument to Smith and others; and these indorsements are signed with the name of Burgoyne by said G. W. Williams; and it is contended that, if the policy were otherwise invalid for the want of the counter-signature of Burgoyne in regular form, that his name to said indorsements by G. W. Williams is a sufficient countersigning to make the instrument a valid policy.

Whether the instrument, had it been issued and delivered by Burgoyne himself, *as a policy of insurance*, would have been valid, notwithstanding an omission to countersign it; and, whether the indorsements might be regarded as a sufficient countersigning, and sanction of the instrument by Burgoyne, the agent, had he, himself, put his signature to them, need not be decided. For, the issuing of the instrument, and the signatures to the indorsements are, all, the acts of G. W. Williams, the book-keeper.

The deposition of Williams was taken, and he states that he had Burgoyne's "authority for signing policies of insurance; that losses were paid by said company on policies which Burgoyne had never signed in person; and that Burgoyne recognized all his acts, by reason of his connection with the company."

But whatever may have been done by Burgoyne in conferring authority upon Williams, and in recog-

1. A policy of insurance issued by a clerk of the company purporting on its face that "it shall not be valid until countersigned by John Burgoyne, agent at Cincinnati," and which was never so signed, is not a valid and binding policy.

2. Where a trust and confidence of a high character is given to an agent, he cannot transfer such authority, without express power to do so.

nizing his acts, and in paying losses by him, incurred under policies issued by Williams, is, in our opinion, immaterial. For there is no evidence that the company had been apprized of this mode of doing business at their agency in Cincinnati, and that it had received their sanction and approbation. Whatever effect, therefore, might be given to such acts, in the absence of the counter-signature of the agent, need not be determined. The instrument itself, upon its face, is declared to be invalid, without the counter-signature of the agent, Burgoyne; he alone had authority to issue policies from the office of the company at Cincinnati, and he had no right or power to delegate this authority to another. And if it were conceded, that a policy issued as this was without the counter-signature of Burgoyne, might be rendered valid and effectual, by showing a subsequent approval of the company; or, that the company had known, and been in the habit of sanctioning and approving such acts—none of these things were manifested by the proof. The agent of the company, from the nature of their business, and the large amount of capital which may be supposed to be involved, ought to be a man of intelligence, prudence, and integrity. And the agent, in this case, was doubtless selected with an eye to these necessary qualities. He it is in whom the company confided, from what appears in the record, and not in Mr. Williams, who, whatever may be his intelligence, discretion, integrity, and business capacity, was not the man to whom the important trusts of the company had been committed.

3. A note executed for insurance upon a void policy of insurance cannot be enforced.

We are of opinion, therefore, from the record in this case, that the instrument exhibited does not appear to be a valid policy of insurance, and, consequently, that there seems to be no consideration for the note sued on.

Wherefore the judgment is reversed, and the cause remanded for a new trial.

*Hord*, for plaintiff; *Payne* and *Harlan*, for defendant.